UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DAVID S.,[1]

                       Plaintiff,                        DECISION AND ORDER

-vs-

                                            1:24-cv-0891-MAV

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

---

## INTRODUCTION

On September 20, 2024, David S. ("Plaintiff") filed this action pursuant to 42 U.S.C. §§ 405(g), seeking judicial review of the Commissioner of the United States Social Security Administration's ("Commissioner") denial of his application for Disability Insurance Benefits ("DIB"). ECF No. 1. Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF No. 5 (Plaintiff); ECF No. 8 (Commissioner). For the reasons set forth below, Plaintiff's motion for judgment on the pleadings [ECF No. 5] is denied. The Commissioner's motion [ECF No. 8] is granted.

## PROCEDURAL HISTORY

The Court assumes the reader's familiarity with the facts and procedural history in this case, and therefore addresses only those facts and issues which bear

---

[1] The Court's Standing Order issued on November 18, 2020, directs that, "in opinions filed pursuant to . . . 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

directly on the resolution of the motions presently before the Court.

## I. Plaintiff's Applications

Plaintiff filed his application for DIB on March 9, 2022, alleging a disability onset date of January 8, 2021. Administrative Record ("AR") at 79,[2] ECF No. 3. His disability report indicated that his ability to work was limited by claustrophobia ("cannot wear masks"), his left hip ("[e]ventually needs to be replaced"), left knee issues, and a right rotator cuff issue. AR at 214. Plaintiff's claims were initially denied in July 2022, and upon reconsideration in January 2023. AR at 65–98.

## II. Plaintiff's Hearing Before the ALJ

After the Commissioner denied his applications at the initial level and on reconsideration, Plaintiff appeared with counsel for an in-person hearing before an Administrative Law Judge ("ALJ") on November 13, 2023. AR at 29. At the beginning of the hearing, the ALJ asked counsel what the severe impairments in the case were, and counsel responded:

> . . . [W]e have issues with claustrophobia and a panic disorder. And the major one that's been affecting him as well has been left hip osteoarthritis, post-left hip replacement that was done in May 2023. I believe those have been the primary issues that . . . . unfortunately affected his ability to return to any job, past work or other job on a full time basis.

AR at 32.

After allowing Plaintiff's counsel to examine Plaintiff as to the various symptoms and limitations caused by his impairments, particularly his left hip

---

[2] The page references from the transcript are to the bates numbers inserted by the Commissioner, not the pagination assigned by the Court's CM/ECF electronic filing system.

impairment, the ALJ then asked Plaintiff about a form he filled out upon his discharge from physical therapy for his hip in August 2023. AR at 53 (citing AR at 542). In particular, the ALJ noted that Plaintiff had filled out a form that "identified in most categories that you had no difficulty [and t]he only category that you said you had difficulty in or moderate difficulty was running on even ground, running on uneven ground and making sharp turns while running fast." *Id.* Plaintiff agreed that all of that was true in August 2023, and that his physical therapy treatment goals "were completely met." AR at 53–54.

The ALJ then turned to counsel and asked, "So, counsel, are you petitioning for a closed period here? You didn't mention that, so I was confused." AR at 56. Counsel responded, "No . . . . we're still contending there's not to any degree that would sustain full time employment at this point . . . . the sustained activity is not eight hours a day, five days a week." AR at 56–57. Upon further questioning, counsel admitted that there was no medical source statement that Plaintiff could not sustain eight hours of work, but pointed to Plaintiff's testimony as evidence in the record that would support that inference. AR at 57–58.

The ALJ also heard testimony from vocational expert Dawn Blythe (the "VE"), who opined that a hypothetical claimant with a residual functional capacity[3] ("RFC") identical to that which the ALJ ultimately determined Plaintiff to have would be able to perform Plaintiff's past relevant work as a laboratory technologist. AR at 60–61

---

[3] "Residual functional capacity" ("RFC") means the most that the claimant can still do in a work setting despite the limitations caused by the claimant's impairments. 20 C.F.R. § 404.1545.

(classified by the Dictionary of Occupational Titles as "Laboratory Tester").

## III. The ALJ's Decision

On February 6, 2024, the ALJ issued a decision finding that Plaintiff was not disabled, and therefore did not qualify for DIB. AR at 22–23. At the outset, the ALJ found that Plaintiff met the insured status requirements for DIB[4] through December 31, 2026. AR at 17. Then, at step one of the Commissioner's "five-step, sequential evaluation process,"[5] the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of January 8, 2021. AR at 17.

At step two, the ALJ determined that Plaintiff had only one medically determinable physical impairment, the severe impairment of degenerative joint disease of the left hip.[6] AR at 17. The ALJ also found medically determinable mental

---

[4] Claimants must meet the insured status requirements of the Social Security Act to be eligible for DIB. *See* 42 U.S.C. § 423(c); 20 C.F.R. § 404.130.

[5] In addition to the insured status requirements for DIB benefits, the Social Security Administration has established a "five-step, sequential evaluation process" that an ALJ must follow to determine whether a claimant has a "disability" under the law:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014); citing, *inter alia*, 20 C.F.R. § 404.1520(a)(4)(i)–(v), § 416.920(a)(4)(i)–(v)). The claimant bears the burden of proof for the first four steps of the process. 42 U.S.C. § 423(d)(5)(A); *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999). At step five, the burden shifts to the Commissioner to demonstrate that there is other work in the national economy that the claimant can perform. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).

[6] Under 20 C.F.R. § 404.1521, "a physical or mental impairment must be established by objective medical evidence from an acceptable medical source."

impairments of claustrophobia and obsessive compulsive disorder. AR at 17–19. The ALJ therefore performed the "special technique" required under 20 C.F.R. § 404.1520a[7] for mental impairments, and concluded that Plaintiff had no limitation "understanding, remembering, or applying information," and mild limitations "interacting with others," "concentrating, persisting, or maintaining pace," and "adapting or managing oneself." AR at 18–19. Because he found that Plaintiff's medically determinable mental impairments caused no more than "mild" limitation in any of the functional areas, or more than minimal limitation in Plaintiff's ability to do basic work activities, the ALJ determined that Plaintiff's mental impairments were nonsevere. *Id.*

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR at 19.

Before proceeding to step four, the ALJ found that Plaintiff had the RFC to

---

[7] When a claimant alleges mental impairments in support of their claim of disability, the ALJ must supplement steps two and three of the standard five-step analysis with what is known as the "special technique." *See* 20 C.F.R. § 404.1520a; *see Nedzad O. v. Comm'r of Soc. Sec.*, 577 F. Supp. 3d 37, 44 (N.D.N.Y. 2021). This technique requires the ALJ to determine first whether the claimant has a "medically determinable mental impairment." *Nedzad O.*, 577 F. Supp. 3d at 44. If the claimant is found to have such an impairment, the ALJ must rate the degree of functional limitation resulting from the impairment(s) across four broad functional areas, known as "Paragraph B criteria": (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting and managing oneself. *See* 20 C.F.R. §§ 404.1520a(c)(3); 20 C.F.R. Part 404, Subpart B, Appendix 1 §§ 12.00(E)(1)–(4); *see also Nedzad O.*, 577 F. Supp. 3d at 44. Based on the record, the ALJ must make a finding as to the degree of any limitations in each functional area, using assessments of "none," "mild," "moderate," "marked," and "extreme," *see* 20 C.F.R. §§ 404.1520a(c)(4), which in turn informs whether the ALJ deems the mental impairment "severe" or "non-severe," *see id.* §§ 404.1520a(d)(1). If the ALJ rates the claimant's degree of limitation as "none" or "mild," the ALJ "will generally conclude that [claimant's] impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [claimant's] ability to do basic work activities." 20 C.F.R. § 404.1520a(d)(2).

perform light work as defined in 20 C.F.R. § 404.1567(b) except that he could:

> lift and carry 20 pounds occasionally and 10 pounds frequently . . . stand or walk for 6 hours in an 8 hour day . . . sit for six hours in an 8 hour day . . . occasionally climb ramps and stairs . . . occasionally balance, stoop, crouch and kneel . . . never climb ropes ladders or scaffolds . . . never crawl.

AR at 19.

Based on this RFC and on the testimony of the VE, the ALJ found at step four that Plaintiff was capable of performing his past relevant work as a laboratory technologist. AR at 22. Accordingly, the ALJ found that Plaintiff was not disabled under the Social Security Act. AR at 22–23.

On July 24, 2024, the Appeals Council denied Plaintiff's request to review the ALJ's decision. AR at 1–6. The ALJ's decision thus became the "final decision" of the Commissioner. *See Perez v. Chater*, 77 F.3d 41, 44 (2d Cir. 1996) (citing 20 C.F.R. § 404.981) ("[I]f the Appeals Council denies review, the ALJ's decision becomes the [Commissioner]'s final decision.").

## LEGAL STANDARD

Under 42 U.S.C. § 423(d), a claimant is disabled and entitled to DIB if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months."

Where an individual's application for disability benefits has been denied, 42 U.S.C. § 405(g) defines the process and scope of judicial review of the

Commissioner's final decision. The fourth sentence of § 405(g) empowers the reviewing court to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing."

"The entire thrust of judicial review under the disability benefits law is to ensure a just and rational result between the government and a claimant, without substituting a court's judgment for that of the [Commissioner], and to reverse an administrative determination only when it does not rest on adequate findings sustained by evidence having rational probative force." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (internal citation and quotation marks omitted). Therefore, it is not the reviewing court's function to determine *de novo* whether the claimant is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, the reviewing court must determine "whether the Commissioner applied the correct legal standard[s]." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). Provided the correct legal standards are applied, the district court's review is deferential: a finding by the Commissioner is "conclusive" if it is supported by "substantial evidence." 42 U.S.C. § 405(g).

"[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (noting that the phrase "substantial evidence" is a term of art used in reviewing administrative agency decisions to signify evidence that amounts to "more than a mere scintilla"). Thus, once an ALJ finds facts, a reviewing court can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Brault*, 683 F.3d

at 448. Yet, although "the evidentiary threshold for the substantial evidence standard is not high, . . . [it] is also not merely hortatory: [i]t requires relevant evidence which would lead a reasonable mind to concur in the ALJ's factual determinations." *Colgan v. Kijakazi*, 22 F.4th 353, 359 (2d Cir. 2022) (internal quotation marks and citation omitted).

## DISCUSSION

In Plaintiff's motion for judgment on the pleadings, he argues that the ALJ erred when he failed to include any limitations in his RFC finding for Plaintiff's medically determinable mental impairments, or otherwise explain why such limitations were not warranted. ECF No. 5-1 at 11–18. Plaintiff also maintains that it was error for the ALJ not to consider a closed period of benefits given his determination that Plaintiff improved after his hip replacement surgery. *Id.* at 18–21. In response to both of Plaintiff's arguments, the Commissioner argues that the ALJ's decision was not erroneous, and was supported by substantial evidence. ECF No. 8-1. Having carefully reviewed the parties' papers and the relevant sections of the administrative record, the Court finds that Plaintiff's arguments lack merit, and therefore that his motion should be denied and the Commissioner's motion granted.

## I. The Absence of Mental Limitations in the RFC Determination

In arguing that the ALJ improperly excluded mental health limitations from his RFC determination and failed to provide an adequate explanation as to why such limitations were excluded, Plaintiff does not contest the ALJ's findings of non-severity at step two. Rather, Plaintiff points out that the ALJ ultimately concluded

that Plaintiff was capable of his past skilled work as a laboratory technologist, and that mental health limitations "would materially impact his ability to perform skilled level work." ECF No. 5-1 at 11. Plaintiff therefore argues that this omission not only constitutes error, but also "has led to a finding not substantially supported by the totality of evidence, warranting remand." *Id.*

### A. Legal Principles

Pursuant to 20 C.F.R. § 404.1545(a)(2), an ALJ must consider all of a claimant's medically determinable impairments, including nonsevere impairments, when assessing a claimant's RFC. *See, e.g., Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012) ("[An] RFC determination must account for limitations imposed by both severe and nonsevere impairments."). However, the requirement that the ALJ must *consider* Plaintiff's non-severe impairments in his RFC determination does not require him to *include restrictions* in his RFC to accommodate those impairments. *See, e.g., Andrew P. v. Comm'r of Soc. Sec.*, 719 F. Supp. 3d 248, 254–55 (W.D.N.Y. 2024) (collecting cases).

Indeed, "there are no regulations that mild limitations require mental limitations in the RFC." *Jane M. A. v. Comm'r of Soc. Sec.*, No. 19-CV-00808, 2021 WL 63066, at *5 (W.D.N.Y. Jan. 7, 2021)). Thus, where "an ALJ's findings of only mild limitations in mental functioning are supported by substantial evidence in the record, the ALJ is not required to include mental limitations or restrictions in the RFC." *Katherine R. v. Comm'r of Soc. Sec.*, No. 1:20-CV-01055-MJR, 2021 WL 5596416, at *7 (W.D.N.Y. Nov. 30, 2021) (citing, inter alia, *Lynette W. v. Comm'r of*

9

*Soc. Sec.*, 19-CV-1168, 2021 WL 868625, at *4 (WDNY Mar. 9, 2021)).

**B. The ALJ's RFC Discussion**

Here, the Court finds that the ALJ adequately considered Plaintiff's non-severe mental impairments in formulating Plaintiff's RFC, and that the RFC determination is supported by substantial evidence.

To begin with, at the conclusion of his analysis at step two, the ALJ acknowledged that his application of the special technique under 20 C.F.R. § 404.1520a was not an RFC assessment, which "requires a more detailed assessment." AR at 19. However, the ALJ also noted that "the following [RFC] assessment reflects the degree of limitation the undersigned has found in the [step two] mental function analysis." *Id.* Contrary to Plaintiff's suggestion, this was not mere "lip service" to the rules. ECF No. 5-1 at 15–16 (quoting *Susan L. v. Comm'r of Soc. Sec.*, 6:20-cv-6877-LJV, 2022 WL 16700288, *3 (W.D.N.Y. Nov. 3, 2022)).

Instead, the ALJ's RFC analysis not only specifically acknowledged that Plaintiff alleged the mental impairment of claustrophobia at the time of his application (AR at 20), but also contained a separate discussion of plaintiff's mental limitations, including the ALJ's evaluation of the prior administrative medical findings of the state agency psychological reviewers, the opinion of consultative examiner, Christine Ransom, Ph.D., and "the lack of significant mental health treatment" in the record. AR at 21–22.

Dr. Ransom examined Plaintiff in July 2022, finding him to be cooperative, socially appropriate, neatly dressed, and appropriately groomed, with fluent and

intelligible speech, coherent and goal directed thought processes, intact attention and concentration, intact memory, average intellectual functioning, and good insight and judgment. AR at 324–25. With respect to Plaintiff's "mode of living," Dr. Ransom noted that "[h]e can manage almost every situation except ten hours of work as a pipefitter wearing a mask without using his medication," and that "[a]lthough he is not able to be a pipefitter, he would not have any difficulty doing other kinds of jobs." AR at 325. Consequently, she opined that Plaintiff would have only "mild episodic limitation" interacting with others, sustaining concentration, sustaining a routine, and regulating emotions, and no limitation being aware of hazards, understanding and applying simple and complex instructions, or using reasoning and judgment to make work-related decisions. *Id.* She stated that these results "are consistent with a psychiatric condition that will not interfere with the [Plaintiff]'s functioning on a daily basis while he is appropriately medicated." AR at 326. The ALJ noted that this opinion is consistent with the limited counseling records, and with Plaintiff's report to a different doctor that he took Xanax only on an as needed basis. *Id.* (citing AR at 328, reporting his "current medications" as 0.5 milligrams of Xanax "p.r.n."[8]).

The ALJ also cited twice to the "limited counseling records," which the ALJ characterized as pertaining "mostly to [Plaintiff]'s efforts to be rehired." AR at 22 (citing AR at 271–92). These records contained treatment notes from Louis P. La Barber, Ph.D. of Psychotherapy Associates of Niagara. Dr. La Barber saw Plaintiff

---

[8] The abbreviation "p.r.n." stands for "pro re nata, which means "as the thing is needed." *See, e.g.,* Martin K, Arora V, Fischler I, Tremblay R. *Descriptive analysis of pro re nata medication use at a Canadian psychiatric hospital.* INT J MENT HEALTH NURS. 2017 Aug 26, (4):402-408 (available at https://pubmed.ncbi.nlm.nih.gov/27804222/).

on November 17, 2020 to evaluate and help manage his anxiety driven by his employer's face mask requirements (AR at 279–80); December 11, 2020 as a follow-up and authorizing his return to work on December 15 (AR at 278); January 19, 2021 discussing Plaintiff's refusal to participate in a respirator test through "occupational health" at Niagara Falls Memorial Medical Center (AR at 277); and February 3, 2022 (AR at 276). As the ALJ pointed out, these records do not suggest any "significant mental health treatment." AR at 21. In short, "contrary to plaintiff's argument, it is clear that the ALJ fully considered plaintiff's mental limitations in fashioning the RFC." *Katherine R.*, 2021 WL 5596416 at *7.

To be sure, as Plaintiff suggests, "[a]dequate consideration of a plaintiff's non-severe mental impairments becomes particularly important where the disability determination turns upon her ability to perform skilled or highly skilled work." *Novas v. Kijakazi*, No. 22-CV-1020 (MKV) (BCM), 2023 WL 2614362, at *12 (S.D.N.Y. Mar. 8, 2023), *report and recommendation adopted sub nom. Novas v. Comm'r of Soc. Sec.*, No. 22-CV-1020 (MKV), 2023 WL 2613550 (S.D.N.Y. Mar. 23, 2023)). As discussed above, the Court finds that the ALJ *did* adequately consider Plaintiff's impairments. Furthermore, the Court notes that Plaintiff has not shown any limitations due to his mental condition over and above the "mild and episodic" difficulties that Dr. Ransom observed as happening only "in certain select situations." AR at 326. Instead, Plaintiff relies on the ALJ's and psychologists' findings of mild limitations in the areas of mental functioning, but does not articulate how he was unable to perform his past work because of these limitations. He has thus not met his burden at Step Four of the

sequential analysis of proving that he could not perform his past relevant work as a lab technologist. *See Lizzette R. v. Comm'r of Soc. Sec.*, No. 23-CV-6724S, 2025 WL 758177, at *6 (W.D.N.Y. Mar. 11, 2025).

Accordingly, the Court finds that the RFC discussion demonstrates that the ALJ adequately considered Plaintiff's nonsevere mental impairments, and that his RFC that did not include additional mental limitations was supported by substantial evidence. *See Andrew P.*, 719 F. Supp. 3d at 255 ("[T]he ALJ discussed Plaintiff's [nonsevere impairments] at length when assessing the RFC, and it is clear to the Court how the ALJ evaluated Plaintiff's [nonsevere] impairments and assessed the RFC to not include any additional limitations.").

## II. The Potential for a Closed Period of Benefits

In addition to taking issue with the ALJ's consideration of Plaintiff's nonsevere mental impairments in his RFC discussion, Plaintiff also maintains that the ALJ erred by failing to consider awarding a closed period of benefits for the period prior to Plaintiff's recovery from his hip surgery. ECF No. 5-1 at 18–21. Plaintiff points to the ALJ's particular focus on Plaintiff's recovery from hip surgery at the hearing, and argues that he did not properly consider whether a closed period of disability was warranted, given the severe pain and impairment Plaintiff experienced in the months before the surgery. *Id.* at 21.

### A. Legal Principles

As other courts in this Circuit have routinely recognized, "'[a] closed period of disability refers to when a claimant is found to be disabled for a finite period of time

which started and stopped prior to the date of the administrative decision granting disability status.'" *Sandra Lee M. v. Comm'r of Soc. Sec.*, 541 F. Supp. 3d 277, 283 (W.D.N.Y. 2021) (quoting *Pettaway v. Colvin*, 12-CV-2914 (NGG), 2014 WL 2526617 at *13 (E.D.N.Y. June 4, 2014)). If the ALJ finds that a claimant was disabled at any point in time, that "'ALJ should consider not only whether Plaintiff was disabled at the time of the hearing, but also whether Plaintiff was entitled to disability benefits for any closed, continuous period of not less than 12 months, following the date of [his] claim.'" *Id.* (quoting *Williams v. Colvin*, No. 15-CV-144S, 2016 WL 3085426, at *4 (W.D.N.Y. June 2, 2016)). "It is particularly necessary for the ALJ to consider whether a closed period of disability existed where the record shows that plaintiff's condition has improved significantly over time as the result of a discrete event, such as surgery." *Robertson v. Berryhill*, No. 6:16-CV-06481 (MAT), 2017 WL 3574626, at *2 (W.D.N.Y. Aug. 18, 2017).

Nevertheless, the ALJ's failure to consider a closed period does not justify remand where the ALJ's conclusion necessarily "foreclose[s] the existence of such a period." *Luciana A. v. Comm'r of Soc. Sec.*, No. 20-CV-1448-FPG, 2022 WL 2988094, at *6 (W.D.N.Y. July 28, 2022) (internal quotation marks and citation omitted); *see also Donna B. o/b/o C.B. v. Comm'r of Soc. Sec.,* No. 19-CV-1163-FPG, 2021 WL 2592906, at *3 (W.D.N.Y. June 24, 2021) (finding failure to expressly consider a closed period harmless where "the record does not show that [the claimant]'s condition improved significantly over time, and because the ALJ's ultimate disability determination is supported by the record").

14

**B. The ALJ's Decision**

At the outset, the Court notes that the ALJ did expressly raise the issue of a closed period with Plaintiff's counsel at the hearing in November 2023. As described above, after citing Plaintiff's discharge papers from post-surgery physical therapy for his left hip in August 2023, which indicated Plaintiff's physical therapy treatment goals "were completely met" (AR at 53–54, citing AR at 542), the ALJ asked Plaintiff's counsel, "[A]re you petitioning for a closed period here? You didn't mention that, so I was confused." AR at 56. Counsel responded, "No . . . . we're still contending there's not to any degree that would sustain full time employment at this point . . . . the sustained activity is not eight hours a day, five days a week." AR at 56–57.

Therefore, it is arguable that Plaintiff has waived review on the issue as to whether the ALJ should have considered a closed period. *See, e.g., Robertson*, 2017 WL 3574626 at *2 (quoting *Hapstak v. Comm'r of Soc. Sec.*, 2003 WL 22232046, at *12 (N.D.N.Y. Sept. 26, 2003) ("It has been held . . . that with some exceptions, the failure to raise an argument in the Agency precludes plaintiff from raising it in federal court."). Nevertheless, the Commissioner has not argued that Plaintiff is precluded from making the argument, and so – without deciding whether the Commissioner would have been successful had he argued waiver – the Court will address the closed period issue.

In any event, the Court finds that Plaintiff's argument is without merit because although Plaintiff's physical impairment may have been improved by hip surgery over the summer of 2023, Plaintiff has failed to demonstrate that the

condition improved was disabling. *Donna B. o/b/o C.B.*, 2021 WL 2592906 at *3 (citing *Williams v. Colvin*, No. 15-CV-144S, 2016 WL 3085426, at *4 (W.D.N.Y. June 2, 2016)). Put another way, the ALJ's finding that Plaintiff was not under a disability from January 8, 2021 through the date of the decision (February 6, 2024) was supported by substantial evidence.

With respect to the objective evidence in the record, the ALJ noted that Plaintiff began treating with orthopedic specialist Kafai Lai, M.D., for his complaints of hip pain in May 2021. AR 20 (citing AR 408–445). The ALJ noted that Plaintiff complained to Dr. Lai of pain in the groin area made worse with prolonged walking or exertion, as well as tenderness in the groin region and along the greater trochanter, but that range of motion and gross motor functioning was normal, and the x-rays of the left hip showed only moderate osteoarthritis. *Id.* (citing AR at 433). Plaintiff returned to Dr. Lai in March 2022, and examination showed decreased motion in Plaintiff's left hip. *Id.* (citing AR at 417). Yet Dr. Lai found the condition "not severe radiographically," and therefore treated with a cortisone injection, and provided Plaintiff a prescription for 800 milligrams of ibuprofen taken three times daily with follow-up at the clinic in three months. *Id.*

In May 2022, Plaintiff was evaluated by Jean Cange, M.D. *Id.* Dr. Cange found that Plaintiff walked with a normal gait, but that imaging showed "[s]evere degenerative changes of the left hip with bone-on-bone articulation." AR at 340. Upon physical examination, Plaintiff's hips showed some limitation to internal rotation and discomfort at the groin, but presented normal to inspection, normal muscle tone

bilaterally, 5/5 strength throughout, and negative straight leg and log roll tests. AR at 20 (citing AR at 370). Because Plaintiff's pain persisted despite "physical therapy / home exercises," Dr. Cange recommended another corticosteroid injection, and warned that "for refractory symptoms, surgical intervention may be considered." AR at 340. *See also* AR at 20 (citing AR at 371). Plaintiff returned for the injection in July 2022, but did not report benefit from it, and in September 2022 requested aquatic therapy. AR at 20 (citing AR at 377, 380).

In July 2022, Hongbiao Liu, M.D., performed a consultative medical examination of Plaintiff. AR at 21 (citing AR at 328–31). Among other findings, Dr. Liu noted a limping gait to the left, a squat limited to 30% by pain, and positive straight leg raises bilaterally. *Id.* (citing AR at 329). However, he also observed full range of motion of hips, knees, and ankles bilaterally, and 5/5 strength in the upper and lower extremities. *Id.* (citing AR at 330). Consequently, Dr. Liu opined that Plaintiff had "mild to moderate limitation for prolonged walking, bending, kneeling, squatting, stair climbing, carrying heavy weights, prolonged sitting and standing." AR at 330. The ALJ found this opinion to be "generally persuasive." AR at 22.

The ALJ found the prior administrative medical findings of the state agency medical reviewers – both of whom found Plaintiff to be not disabled – to be even "more persuasive" than Dr. Liu's opinion. AR at 22. Non-examining state agency medical consultant D. Brauer, M.D. conducted a "physical residual functional capacity assessment" based on Plaintiff's medical record through July 12, 2022, and concluded that Plaintiff could occasionally lift and carry 20 pounds, frequently carry 10 pounds,

stand and/or walk for a total of about 6 hours in an 8-hour workday, and sit for a total of about 6 hours in an 8-hour workday, with a series of postural limitations less restrictive than the ALJ's RFC. AR at 73–75. Non-examining state agency medical consultant Gregory Zito, M.D. reviewed the record through January 11, 2023 and found the same exertional limitations but more restrictive postural limitations. AR at 91–94.

The ALJ noted that Plaintiff underwent a left total hip arthroplasty on May 9, 2023. AR at 21 (citing AR at 384). By June, Plaintiff reported "minimal pain," "being back to most of his regular activities," and walking 5 to 10 blocks. AR at 21 (citing AR at 389–90). And, as discussed at the hearing, by August 2023, Plaintiff reported that he had "no difficulty" with most daily physical activity, "a little bit of difficulty" with a few things such as hopping and squatting, and only moderate difficulty running on even or uneven ground or making sharp turns while running fast. AR at 21 (citing AR at 542).

In sum, the ALJ reasonably weighed the evidence throughout the entire period of disability and crafted an RFC that was supported by "more than a mere scintilla" of evidence. *Biestek*, 587 U.S. at 103. Plaintiff "had a duty to prove a more restrictive RFC" during any portion of the period between his alleged onset date in January 2021 and the date of decision in February 2024, yet he failed to do so. *Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018). Accordingly, the Court finds that Plaintiff's second argument is also without merit.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings [ECF No. 5] is denied, and the Commissioner's motion for judgment on the pleadings [ECF No. 8] is granted. The Clerk of Court is directed to enter judgment on behalf of the Commissioner and close this case.

SO ORDERED.

DATED:      March 25, 2026
            Rochester, New York


_____
HON. MEREDITH A. VACCA
United States District Judge

19